```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
LAYNE W. JOHNSON,

                        Plaintiff,                          MEMORANDUM AND ORDER

           -against-                                        16 CV 3919 (AMD) (CLP)

FEDERAL BUREAU OF PRISONS,

                        Defendant.
----------------------------------------------------------- X
```

**POLLAK**, United States Magistrate Judge:

Plaintiff Layne W. Johnson ("plaintiff") filed this action *pro se* on April 23, 2015 against the Federal Bureau of Prisons ("BOP" or "defendant"). He brings his claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–80, to recover for injuries he sustained by virtue of alleged negligent medical treatment he received from October 2012 through January 2014 while he was incarcerated in the Metropolitan Detention Center ("MDC") in Brooklyn. Plaintiff proceeded *pro se* until February 2, 2017, at which time he became represented by *pro bono* counsel.

On October 18, 2017, the Court held a status conference to discuss the progress of this case and to address plaintiff's outstanding motions.

## DISCUSSION

**A. Plaintiff's Motion for Protective Order Regarding Confidential Records**

  1. The Parties' Positions

On July 13, 2017, plaintiff, now represented by counsel, filed a motion seeking a

1

protective order to ensure that any confidential and sensitive information shared during the course of the litigation, such as his medical records, will be treated confidentially. (Pl.'s MPO, July 13, 2017, ECF No. 47).

In opposition, the defendant argues that the motion for protective order should be denied because the plaintiff "waived any privilege pertaining to these records" by bringing suit, and because plaintiff, while proceeding *pro se*, already signed releases for the production of his medical records absent a protective order. (See Def.'s Opp'n at 1-2, July 20, 2017, ECF No. 48). Defendant argues that requiring the defendant to file confidential medical records under seal would be "prejudicial to the defendant and against sound public policy favoring public access to the claims and defenses set forth by the parties." (See id. at 2).

Plaintiff offers three arguments in reply. (See Pl.'s Reply, July 24, 2017, ECF No. 49). Plaintiff first argues that defendant confuses privilege with privacy. (Id. at 1). He is not withholding any records from the defendant, but instead seeks to guard such records against public dissemination. (Id.) Second, plaintiff explains that a protective order does not govern what will end up being sealed if used in connection with the proceedings, but instead "sets forth a procedure to help the parties identify what documents or information may be subject to a sealing request." (Id. at 2). Finally, plaintiff argues that "[w]hen Mr. Johnson signed releases for the production of his medical records, he was *pro se* and not aware of the need for a protective order to guard his privacy interests. Given his *pro se* status at the time, his failure to request a protective order should not serve as an 'inadvertent forfeiture' of his right to privacy in his medical records." (Id. at 3). That is particularly so, he argues, in light of the "special solicitude" afforded to *pro se* litigants. (Id.)

At the status conference, defendant's counsel from the United States Attorney's Office

2

("USAO") presented additional arguments in opposition to the issuance of a protective order. Specifically, the defendant argued that the USAO has never entered into a protective order regarding a plaintiff's medical records in a personal injury or medical negligence case such as this. According to counsel, such an order is unnecessary given the USAO's promise not to misuse the records. Counsel also raised concerns that plaintiff, who is now represented by a firm that defendant contends is "highly litigious," would use the protective order as the basis for a motion to hold the defendant and its counsel in contempt. In response, plaintiff explains that he seeks only to ensure prospectively that his confidential information is not shared outside of this litigation to the extent possible in light of the time that has passed without a protective order in place. Plaintiff further argues that a protective order should be unobjectionable given that the defendant has already pledged to keep the medical records confidential.

    2. <u>Good Cause for Protective Order</u>

Rule 26 of the Federal Rules of Civil Procedure empowers the Court to issue a protective order upon a showing of "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The regulations promulgated to implement the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (1996), explicitly contemplate that both state and federal courts will issue protective orders in the form of a "HIPAA-Qualified Protective Order" to allow covered health providers to disclose a patient's medical information. <u>See</u> 45 C.F.R. §§ 164.512(e)(i)-(ii). To enable a covered entity to release such information, the protective order must specifically provide that: (1) the parties are prohibited from using or disclosing protected health information for a purpose other than that for which it was requested,

and (2) any information provided in response to such an order must be returned to the provider or destroyed at the end of the litigation. See 45 C.F.R. § 164.512(e)(v)(A)-(B).

Thus, federal courts routinely issue protective orders to ensure the confidentiality of medical records. That is so even in proceedings such as this, where the plaintiff has put his medical condition at issue. The Court has carefully reviewed each of the cases cited by the defendant and concludes that plaintiff is correct: each of the cases cited by the defendant arose when a party sought a protective order to prevent the other party from obtaining discovery of certain medical records—sometimes even when a confidentiality order was already in place. These cases are entirely different from the situation before this Court, where the plaintiff is not resisting disclosure of the records to the defendant, but seeks only to limit how such confidential medical records may be used. See, e.g., Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 635 (E.D.N.Y. 1997) (explaining that plaintiff sought to place medical records "outside the reach of discovery" altogether); see also Romano v. SLS Residential Inc., 298 F.R.D. 103, 112–14 (S.D.N.Y. 2014) (explaining that individuals who did not opt out of a class action suit were "deemed to have waived any privilege" in their medical records, thereby ensuring that defendants are "given the right to access pertinent documents in order to defend themselves" by way of a HIPAA-qualified protective order); Floyd v. SunTrust Banks, Inc., 878 F. Supp. 2d 1316, 1327 (N.D. Ga. 2012) (observing that medical records become subject to discovery "when a litigant alleges matters that put her medical status at issue). (See Def.'s Opp'n at 1).

The most recent case defendant relies on, Romano v. SLS Residential, Inc., recognizes that although a plaintiff waives his privilege in medical records by putting his medical condition at issue, such a waiver simply subjects the records to disclosure in discovery but does not deprive the records of all protection. See Romano v. SLS Residential Inc., 298 F.R.D. at 113. (See

4

Def.'s Opp'n at 1-2). Indeed, as the Romano court observed, notwithstanding the waiver subjecting the records to discovery, "it is plainly appropriate to shield [the plaintiff's] identit[y] and course of treatment from the public by requiring that these documents be treated on an 'attorney's eyes only' basis—that is, limited in their disclosure to counsel, designated experts, attorneys' staff, and court staff—for present purposes." Romano v. SLS Residential Inc., 298 F.R.D. at 113. That is precisely what plaintiff proposes the Court should order in this case.

In opposing any protective order, the defendant suggests that entering a protective order will result in a veritable parade of horribles: plaintiff's allegations would appear in the public record while defendant is forced "to place its entire defense under seal;" the defendant "must file under seal medical records documenting the very care plaintiff critiques" in his filings; all of defendant's expert and deposition testimony will have to be placed under seal because it deals with medical care; and the public will be deprived of its right of access to this litigation. (See Def.'s Opp'n at 2).

The defendant's concerns about the issue of sealed filings in these types of cases have been addressed in the cases the defendant cites in opposition. Thus, although it is true that a protective order may provide guidance to the parties regarding what documents it might be appropriate to seal and how such documents should be presented to the Court, the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry governed by a different standard than whether to maintain documents disclosed in discovery in confidence. In determining whether documents should be filed under seal, courts engage in a two-part inquiry.

First, the court decides how strong a presumption of access a document deserves with reference to its role in the judicial process. Next, the court will "balance the weight of that

5

presumption, if any, with competing interests, namely, the private interests and concerns of judicial efficiency and law enforcement, to determine whether or not to seal a document." Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504, 506 (E.D.N.Y. 1999).

A "judicial document" is one that is presented to the Court and "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995). Such documents are presumptively subject to public inspection and thus not properly sealed. See id. at 146. The presumption of access that attends judicial documents stems both from the common law tradition and from the Constitution: "[a]s the exercise of Article III [judicial] powers is a formal act of government, it should be subject to public scrutiny absent exceptional circumstances." Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. at 505.

In contrast to judicial documents, "[d]ocuments that play no role in the performance of Article III functions, *such as those passed between the parties in discovery*, lie entirely beyond the presumption's reach . . . and stand on a different footing than a motion filed by a party seeking action by the court or . . . any other document which is presented to the court to invoke its powers or affect its decisions." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1050 (2d Cir. 1995) (emphasis added) (citations and quotation marks omitted). It is these documents the proposed protective order will govern.

A protective order of the type discussed above and proposed by the plaintiff does not, as defendant argues, require that all documents or testimony related to the plaintiff's medical condition be sealed. Rather, the protective order governs how and to whom the parties may disclose confidential information, and what must be done with such information at the

conclusion of litigation. It therefore primarily governs documents that have not been presented to the Court and which will not be considered in exercising the judicial function.

As the Court in Romano v. SLS Residential Inc. observed, it is up to the Court, once the parties have engaged in discovery and seek to present documents for the Court's substantive consideration, to determine whether the documents should be sealed. That inquiry, however, is properly postponed until the issues crystallizes over the course of litigation and is presented to the Court in connection with a motion or trial. See Romano v. SLS Residential Inc., 298 F.R.D. at 113 (observing that "[w]hether this regime [established by a protective order] needs to be altered for trial may be addressed at a later stage").

The Court is not persuaded by the defendant's arguments that a protective order should not issue. Even if the Court were to credit counsel's assertion that the USAO never enters into protective orders to ensure the confidentiality of medical records, such historical happenstance does not alter the fact that Rule 26 empowers the Court to enter such an order and the HIPAA implementing regulations promulgated by the executive branch explicitly contemplate that such orders will issue. The defendant's concerns about the potential for a contempt citation are similarly unfounded, especially given counsel's representation to the Court that the USAO is committed to ensuring the confidentiality of medical records. Any concerns about past failure to adhere strictly to any confidentiality order are adequately handled by the protective order's prospective-only application. The protective order may not be used to punish the defendant, its counsel, or it experts retroactively.

The Court therefore grants plaintiff's motion for a protective order. The parties are Ordered to meet and confer no later than November 15, 2017 to agree to the terms of a proposed

protective order.[1]  At the conference, counsel for defendant suggested that he is not authorized to negotiate the terms of a protective order, but instead will require approval from a supervisor.  If that is the case, counsel shall attend the meet-and-confer with his supervisor by the appointed date.  The parties shall then submit their proposed protective order to the Court no later than November 17, 2017 and shall attach a joint letter of no more than three pages explaining each party's position with respect to any disagreements.

**B.  Motion to Compel Parameters of Medical Examination**

1.  The Parties' Positions Regarding the Examination

In plaintiff's same July 13, 2017 motion, he also seeks to compel the defendant to specify the parameters of the proposed medical examination as required by Rule 35 of the Federal Rules of Civil Procedure.  (See Pl.'s MPO at 2-3).  Plaintiff acknowledges that he has agreed in principle to the examination, but seeks to require the defendant to specify the "time, place, manner, conditions, and scope" of the examination.  (Id. at 2).  Plaintiff argues that if the parties do not agree to the examination and its parameters, the defendant will be unable to proceed with the examination absent intervention by the Court.

Defendant's entire opposition reads as follows:

> Plaintiff, at the request of defendant has reached out to Jonathan Garay, D.O., to schedule an independent medical exam. Dr. Garay is a New York licensed physician specializing in rehabilitation medicine with decades of practice.  He keeps an office in Manhattan and will, of course, examine plaintiff in his office.

---

[1] At the status conference, counsel for defendant stated he will not agree to any protective order.  As the Court explained at the conference, the Court will enter a protective order, but is ordering the parties to attempt to agree on what the terms of that order should be.

> There is no reason to issue a protective order regarding Dr. Garay's examination of plaintiff and, therefore, plaintiff's application should be denied as without merit.

(Def.'s Opp'n at 3-4).

2. The Examination

Rule 35 empowers the Court to order a physical examination of a party "only on motion for good cause" and with notice to all parties. Fed. R. Civ. P. 35(a)(2)(A). Should the Court decide to require an examination, the order "*must* specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B) (emphasis added); see Schlagenhauf v. Holder, 379 U.S. 104, 117–18 (1964). While trial courts regularly decide whether good cause exists to permit discovery, they do not have the requisite medical expertise to enable them to set forth with specificity the manner, conditions, and scope of physical or mental examinations. Such determinations are best left, whenever possible, to the parties in consultation with their respective medical professionals rather than judges. That is particularly true given that Rule 35 is a blunt instrument that requires courts, *ab initio*, to establish parameters that ideally would be capable of change in response to the examiner's findings during the course of the examination. It is perhaps for this reason that "physical and mental examinations are usually arranged by stipulation of the attorneys, with [Rule 35] standing as a compulsory sanction that helps to produce stipulations." Herrera v. Lufkin Industries, Inc., 474 F.3d 675, 689 (10th Cir. 2007) (quoting Wright & Miller, Federal Practice & Procedure § 2234 (2d ed. 1994)).

That is precisely what happened in this case. At the conference, the Court reviewed with the parties, in broad terms, what would be appropriate for any such medical examination, but did

9

not enter an order to that effect setting forth with specificity each element required by Rule 35. The examination was scheduled to take place on October 31, 2017. Given that neither party has sought the Court's intervention, the Court assumes that the examination went forward on the stipulation of the parties and that motions seeking the Court's intervention with respect to the examination are therefore moot.

**C. Motion to Compel Production of NAPHCare Payment Agreement**

On October 2, 2017, plaintiff filed a motion seeking to compel the defendant to produce the agreement in effect between the Bureau of Prisons and NAPHCare during the time that plaintiff was injured, which governed payment of outside providers of medical services to inmates at MDC. (See Pl. Mot. to Compel, Oct. 2, 2017, ECF No. 50). The defendant references NAPHCare and the payment agreement in several interrogatory responses, but refuses to produce it. (Id. at 2). The basis for the refusal, according to plaintiff's letter, is that "it would be too burdensome for [defendant] to produce the NAPHCare agreement itself." (Id.) Plaintiff argues the agreement is relevant to show "potential bias" and "the standard of care or the allocation of responsibilities between [d]efendant and any external care providers." (Id.)

The defendant opposes the motion to compel by arguing that the agreement is not relevant. (Def.'s Opp'n to Mot. to Compel, Oct. 3, 2017, ECF No. 51). Even if the agreement were relevant to the issue of bias, the defendant explains that it has offered to stipulate that defendant paid for the care plaintiff received and that "the mere fact of payment should allow plaintiff to make [his] argument [about bias] at trial." (Id. at 2). The defendant also argues that the payment agreement is not at all relevant to the standard of care because it is universally

10

acknowledged that "[t]he details of payment are irrelevant to the allocation of duties among medical practitioners." (Id.)

The Court discussed the issue with the parties at the October 18, 2017 conference. Based on the parties' arguments, it was unclear to the Court whether this NAPHCare agreement applied in any way to the doctors employed by the MDC, or would have any bearing on the relevant standard of care for the doctors who are alleged to have been negligent in treating the plaintiff. Although the plaintiff argued the agreement might reveal payments or incentives to outside doctors, it is not clear how such payments to third parties would affect the MDC doctors whose care is at issue. Plaintiff also argues that the agreement is relevant to the issues of allocation of the standard of care and bias, but was unable to elaborate those arguments with any specificity.

Thus, the Court denies plaintiff's motion to compel production of the NAPHCare agreement. Plaintiff may, however, articulate the potential relevance of the NAPHCare agreement with particularity in a letter to the Court, setting forth specific topics he believes the agreement may address and why they are relevant to his claim that defendant's doctors at the MDC were negligent in rendering care to him. If the plaintiff is able to articulate the relevance of such topics, the Court will reconsider its decision denying the request for production.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for protective order is granted. The parties are ORDERED to meet and confer no later than November 15, 2017 in order to agree to the terms of a proposed protective order. An attorney for the defendant with authority to negotiate the terms of a protective order shall attend the meet-and-confer. The parties shall submit their proposed protective order to the Court no later than November 17, 2017 as an attachment to a joint letter of no more than three pages explaining each party's position with respect to any portion of the order on which the parties cannot agree.

Plaintiff's motion to compel the defendant to define the parameters for the October 31, 2017 medical examination of the plaintiff is denied as moot.

Finally, plaintiff's motion to compel production of the NAPHCare agreement is denied, but plaintiff may submit a letter to the Court as provided above.

The defendant shall provide plaintiff with a copy of Dr. Garray's report by November 30, 2017. The parties shall endeavor to complete depositions by December 11, 2017. A status conference is scheduled for **December 13, 2017 at 4:30 p.m.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 9, 2017

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York